IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



FILED

OCT 28 2021

Clerk, U S District Court
District Of Montana
Billings

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GREGG LAWRENCE HAYWOOD, SR.,<br><br>Defendant. | CR 21-40-BLG-SPW<br><br>ORDER |

Before the Court is Defendant Gregg Lawrence Haywood's Motion to Suppress Evidence. (Doc. 19). The United States opposes the Motion. (Doc. 22). The Court held a hearing on the matter on October 22, 2021. The matter is deemed ripe and ready for adjudication. For the following reasons, the Court grants in part and denies in part Haywood's Motion.

I. **RELEVANT BACKGROUND**

Haywood moves to suppress statements he made during a police interrogation. He argues that Agent Kambak violated his *Miranda* rights by not immediately *Mirandizing* him when the interview began and by failing to adequately explain that any statements Haywood made prior to being read his *Miranda* rights could not be used against him.

1

On May 12, 2021, Billings law enforcement responded to a reported carjacking. The complainant told law enforcement that Gregg Haywood threatened him with a firearm and stole his vehicle. The complainant further reported that Haywood was heading to the Muzzle Loader restaurant to meet Haywood's brother. Officers arrived at the Muzzle Loader and spotted Haywood nearby in the reportedly stolen vehicle with his brother and another individual. Officers removed Haywood from the vehicle and placed him in handcuffs.

Detective Aaron Harris of the Eastern Montana High Intensity Drug Task Force Area (EMHIDTA) responded to the scene due to Haywood's known involvement in drug activity. Special Agent Cory Kambak of the Bureau of Alcohol, Tobacco, and Firearms also arrived on scene because of the reported involvement of a firearm in the carjacking. Agent Kambak and Detective Harris uncuffed Haywood and placed him in Detective Harris's FBI pickup to conduct an interview. The interview was recorded and began with Agent Kambak introducing himself and Detective Harris. Agent Kambak asks Haywood routine personal background information including his name, date of birth, current address, and phone number. Approximately one minute into the interview, the following exchange occurs:

> Kambak: Mr. Haywood, I'm not going to lie, I have very limited information but I understand that at some point today, a firearm was involved and you are a convicted felon, is that correct?
>
> Haywood: Yes, sir.

Kambak: Are you on federal probation?

Haywood: No.

Kambak: You're not?

Haywood: No.

Kambak: Ok. I was told otherwise but we'll figure it out.

Haywood: I discharged February 12, 2021.

Kambak: Ok, Ok. But you are a convicted felon, correct? Mr. Haywood?

Haywood: Yes, sir.

Kambak: You know that you are prohibited from possessing firearms or ammunition, correct?

Haywood: Yes, sir.

Kambak: So why don't you give me, like I said, I have very limited information. Um…

Harris: You want to read that? (pointing at an FBI Advice of Rights form on the center console)

Kambak: Oh yeah, my bad, my bad. Let's read your rights real quick.

(Def. Ex. 1). Agent Kambak proceeded to read Haywood his *Miranda* rights. This occurred approximately one minute and fifty seconds into the interview. After hearing his rights read, Haywood said he did not have any questions and orally waived his right to remain silent. Haywood signed the Advice of Rights form affirming his waiver of his rights.

3

Agent Kambak continued the interview and Haywood admitted to possessing a firearm. Haywood told the officers the firearm was currently in the vehicle he was removed from. He denied threatening the complainant with the firearm. Police obtained a search warrant for the vehicle and discovered the firearm inside the vehicle.

Haywood now moves to suppress his admissions because Agent Kambak violated his *Miranda* rights by not immediately *Mirandizing* him when the interview began and by failing to adequately explain that any statements Haywood made prior to being read his *Miranda* rights could not be used against him.

## II.   LEGAL STANDARD

"In order to combat [the pressures inherent in custodial interrogation] and to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights." *U.S. v. Williams*, 435 F.3d 1148, 1151 (9th Cir. 2006) (quoting *Miranda v. Arizona*, 384 U.S. 436, 467 (1966)). "Thus, if a suspect in custody does not receive an adequate warning effectively apprising him of his rights before he incriminates himself, his statements may not be admitted as evidence against him." *Id.* at 1152.

In the case of a law enforcement officer failing to warn a suspect of his *Miranda* rights until after he has made an incriminating statement, the Court must analyze whether the officer engaged in "a deliberate two-step interrogation." *U.S.*

4

*v. Barnes*, 713 F.3d 1200, 1205 (9th Cir. 2013) (quoting *Williams*, 435 F.3d at 1150)). "Such an interrogation occurs when an officer deliberately questions the suspect without *Miranda* warnings, obtains a confession or inculpatory admission, offers mid-stream warnings after the suspect has admitted involvement or guilt, and then has the suspect repeat his confession or elaborate on his earlier statements." *Barnes*, 713 F.3d at 1205. A court determines whether a law enforcement officer engaged in a deliberate interrogation method by reviewing objective evidence and any available subjective evidence, including the officer's testimony. *Williams*, 435 F.3d at 1158. If the officer deliberately employed a two-step interrogation method, the Court must address the effectiveness of the mid-stream *Miranda* warning and determine whether the statements are admissible. *Barnes*, 713 at 1205. If law enforcement officers did not engage in a deliberate two-step interrogation, the suspect's statements are admissible if they were made knowingly and voluntarily. *Williams*, 435 F.3d at 1158.

### III. DISCUSSION

The United States agrees that Haywood was in custody at the time of his interrogation and does not oppose Haywood's motion to the extent it seeks to suppress Haywood's statements made prior to Agent Kambak advising him of his *Miranda* rights. Therefore, those statements are suppressed.

However, the United States argues that Haywood's post-*Miranda* statements are admissible despite Agent Kambak's mid-stream *Miranda* warning because Agent Kambak did not deliberately employ a two-step interrogation method and Haywood voluntarily agreed to talk to law enforcement officers. The Court agrees with the United States and finds that the objective and subjective evidence available demonstrates that Agent Kambak's failure to immediately provide a *Miranda* warning at the beginning of Haywood's interrogation was due to mistake, not a deliberate decision.

Agent Kambak testified that by the time he arrived at the location, he was aware that Haywood had a previous federal felony involving a firearm. Agent Kambak and Detective Harris began the interview with Haywood after uncuffing him and placing him in the pickup. The officers are recorded going through the typical, preliminary interrogation steps of introducing themselves and the reason they are conducting the interview. Agent Kambak then continues by asking Haywood about his status as a felon and whether he was aware that he was prohibited from possessing firearms. Shortly after beginning this line of questioning, Detective Harris interrupts seemingly to remind Agent Kambak of his obligation to warn Haywood of his *Miranda* rights. Agent Kambak responds, "Oh yeah, my bad, my bad. Let's read your rights real quick." (Def. Ex. 1). Both Detective Harris and Agent Kambak testified that this failure to provide an earlier *Miranda* warning was

6

due to mistake and that it was not an intentional decision on the part of either officer. Haywood has presented no evidence to contradict this testimony. Therefore, the Court finds that Agent Kambak's failure to provide an earlier *Miranda* warning was not deliberate.

The Court further finds that Haywood's post-*Miranda* waiver of his rights was made knowingly and voluntarily. Agent Kambak is recorded reading the required *Miranda* rights to Haywood who is then heard orally waiving those rights and agreeing to continue speaking with law enforcement. This waiver was further enforced by Haywood signing the FBI Advice of Rights form provided to him by law enforcement. (Doc. 22-1).

At the hearing, defense counsel questioned both officers on why they did not provide an additional admonishment that anything Haywood said prior to being *Mirandized* could not be used against him. Agent Kambak responded that he did not feel that was necessary given Haywood's consent and his prior experience with the federal justice system when he was convicted of a felony involving firearm. Haywood argues this pre-*Miranda* questioning taints the voluntariness of his subsequent, post-*Miranda* statements because "it would have been completely reasonable for Mr. Haywood to feel *compelled* to continue answering questions and mitigate the perceived damage from his unwarned statements." (Doc. 20 at 12) (emphasis in original). However, as the U.S. Supreme Court has declared in

7

*Oregon v. Elstad*,[1] "a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings." 470 U.S. 298, 318 (1985). The Court finds that Haywood's post-*Miranda* waiver was voluntary in this case and his statements are admissible.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant Gregg Haywood's Motion to Suppress (Doc. 19) is **GRANTED** with respect to Haywood's pre-*Miranda* statements but **DENIED** with respected to Haywood's post-*Miranda* statements.

The clerk is directed to notify counsel and the United States Marshals Service of the entry of this Order.

DATED this 28th day of October, 2021.

SUSAN P. WATTERS
United States District Judge

---

[1] Although the U.S. Supreme Court has carved out an exception to their holding in *Elstad* for instances in which law enforcement deliberately engaged in a two-step interrogation, *Elstad*'s precedent remains good law when courts determine the two-step interrogation method was not deliberately employed. *See Williams*, 435 F.3d at 1157-58.